(No. 6033. February 18, 1935.)

FELIX VAN HOLLEBEKE, Respondent, v. HENRY P.
WHEELER, Appellant.

[41 Pac. (2d) 603.]

A. F. James, for Appellant.

R. W. Beckwith, for Respondent.

MORGAN, J.—Appellant exchanged a farm situated in Washington with respondent and another for a farm situated in Idaho. Incidental to the trade appellant mortgaged the Idaho land to respondent to secure the payment of two notes,—one given by the former to the latter for $750 and the other given by appellant to John McFeely for $800. The $800 note was sold and assigned by McFeely to respondent, who commenced this suit to foreclose the mortgage. Appellant filed an answer and counter-claim in which he alleged fraud was perpetrated by respondent and McFeely, who was the real estate agent who acted for both parties in negotiating the exchange of land, and breach of covenant contained in the contract, that the Idaho land was free from encumbrance. The trial resulted in a decree foreclosing the mortgage, from which this appeal is prosecuted.

Appellant's contention is stated in his brief as follows: "Appellant (defendant below) is relying upon two defenses, namely, breach of covenant against encumbrances and fraudulent representations upon the part of the respondent that the property was free and clear of all liens and encumbrances."

In the contract to exchange farms respondent and his co-owner agreed to convey the Idaho land to appellant "free and clear of all encumbrances," and it was therein further recited that "each party covenants and agrees to and with the other that he is the owner in fee simple of his respective property, that the same is free from all encumbrances . . . . "

December 17, 1917, the United States of America entered into a contract with King Hill Irrigation District (of which the Idaho land is a part) and the State of Idaho wherein the United States undertook to expend a million dollars, or so much thereof as the Secretary of the Interior should find necessary, in the improvement of the irrigation system of the district. It was recited in that contract:

"The District hereby agrees to pay the United States the sum of One Million ($1,000,000) Dollars for the said construction, reconstruction, betterment and repair work hereinabove specified, . . . . "

A provision was contained in the last-mentioned contract for the reduction of the amount of the indebtedness from the district to the United States in the event the full sum of a million dollars was not expended in the improvements therein provided for. It was further recited:

"The said amount herein agreed to be paid by the District to the United States shall become due and payable to the United States in five (5) equal annual installments, the first of which shall be due and payable on December 1st, 1921, and one installment on December 1st of each year thereafter until the whole thereof has been paid, and the District will levy and collect all necessary assessments and will use all the powers and resources of the District, including the taxing power of the District and the power to withhold delivery of water, to collect and pay to the United States each and every one of said installments in full on or before the day the same is due. . . . .

"That subject to review and confirmation by the court, as provided by law, the Directors of the District will apportion the benefits of this contract equally per acre of irrigable land to each and every tract of irrigable land in said district for which water is to be furnished, but it is fully agreed and understood that the district as a whole is bound to pay to the United States the full amount herein agreed to be paid, regardless of the default or failure of any tract in the District, or any land owner of the District in the payment of the assessment levied by the District against such tract, . . . . so that in any event and regardless of any defaults or delinquencies in the payment of any assessments, the full amount due the United States shall be paid to the United States by the District when due.

"It is agreed and understood that this contract and the obligations created thereby shall be the first lien upon all

the funds, collections, property and resources of the District. . . . .

"The District will use its taxing power and all its powers and resources, including the power to withhold the delivery of water, to enforce collection of assessments made by the district, for the payment of the moneys herein provided and agreed to be paid over to the United States by the District.

"No water shall be delivered to the lands of any land owner or entryman who shall be in arrears for more than a year in the payment of any assessment made by the District .against such lands for operation and maintenance or for construction or penalties. . . . . "

The costs of the irrigation works were apportioned to the lands within the district, including the farm here in question, according to the benefits derived therefrom. Since 1920 the government has not enforced the contract, nor does it appear to have attempted to do so, and the record does not show any unpaid assessments against the land in question. Appellant's contention that he has been defrauded, and that there has been a breach of the covenant in the contract that the land was to be conveyed to him free from encumbrance, is based on the theory that the indebtedness from the district to the United States is an encumbrance on the land.

While there is conflict in the evidence as to the statements and representations made to appellant by respondent and McFeely with respect to the title to the land, the trial judge found none of the allegations of fraud, contained in the answer, were true, and the evidence is sufficient to support the finding.

Our irrigation district law provides a choice of a number of methods of procedure to procure irrigation works and water for irrigating the lands which comprise a district, among them being to contract with the government of the United States as was done in this case. Such contract may be entered into with or without the issuance of bonds as the contracting parties may agree. (I. C. A., sec.

42–1809.) Whether bonds are issued and deposited with the contract or not the indebtedness is a general obligation of the district and no tract of land embraced therein can be freed from it by the payment of a portion thereof. All the land comprising the district is and must remain subject to assessment and taxation to pay the debt until it is fully paid. (*American Falls Reservoir Dist. v. Thrall*, 39 Ida. 105, 228 Pac. 236.)

 Chapter 18 of Title 42, I. C. A., authorizes irrigation districts to enter into contracts such as is that under consideration. Sec. 42–1816 is a part of that chapter and provides that whenever money has been advanced by the United States for the construction of irrigation works, as contemplated by said title, the taxing powers of the district shall be used to repay the money so advanced. Secs. 42–1817 and 42–1818 are as follows:

42–1817. ''Levy of assessments to meet payments to government.—If bonds of the district are not deposited with the United States as authorized in this chapter, it shall be the duty of the board of directors at its regular meeting in October to include as part of any levy or assessment authorized under section 42–704 an amount sufficient for all payments each year due or to become due the ensuing year to the United States under the terms of any such contract with the United States. When collected the assessment shall be paid into the district treasury and shall constitute a special fund to be called 'U. S. contract fund of ———— irrigation district.' ''

42–1818. ''Lien of assessments.—All assessments shall be liens against the property assessed from and after the first Monday in March of any year. The lien for the payments due the United States under any contract between the district and the United States, accompanying which bonds have not been deposited with the United States, shall be a preferred lien to that of any issue of bonds or any series of any issue, subsequent to the date of such contract, and

such lien shall not be removed until the assessments are paid or the property sold for the payment thereof.''

It will be seen from the foregoing that our law does not contemplate that any tract of land shall become separately liable for any portion of the indebtedness, nor that any specific lien be created against such a tract other than by assessment for taxation as provided for in the statute. Furthermore the contract clearly provides that the debt shall be the obligation of the district and shall be paid by assessments to be levied by it against the land of which it is comprised.

The right to tax the land, traded to appellant, together with all other land in the district, for the purpose of paying the indebtedness which it owes to the United States, is not an encumbrance in the sense in which that word is used in the contract between the parties litigant, nor will it become such, in whole or in part, unless and until the land is assessed for that purpose. (*Schurger v. Moorman*, 20 Ida. 97, 117 Pac. 122, Ann. Cas. 1912D, 1114, 36 L. R. A., N. S., 313; *Cramblitt v. Sherwood*, 109 Kan. 458, 199 Pac. 925; *Hoge v. Garcia*, (Tex. Civ. App.) 296 S. W. 982.)

The decree is affirmed. Costs are awarded to respondent.

Givens, C. J., and Budge, Holden and Ailshie, JJ., concur.