[Nos. 37003, 37113.   Department Two.   October 10, 1963.]

*In the Matter of the Petition of* QUINCY COLUMBIA BASIN IRRIGATION DISTRICT

and

*In the Matter of the Petition of* SOUTH COLUMBIA BASIN IRRIGATION DISTRICT.*

*Leavy & Taber*, by *James Leavy*, for appellant South Columbia Basin Irrigation District.

*Critchlow & Williams*, for appellant Twillegear and respondent Karlsson *et al.*

*Baird & White*, for respondent Quincy Columbia Basin Irrigation District.

MURRAY, J.†—These consolidated appeals arise from a special statutory proceeding seeking the confirmation of amendatory repayment contracts between two irrigation districts and the United States.

*Reported in 385 P. (2d) 715.

†Judge Murray is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The two districts are the Quincy Columbia Basin Irrigation District in Grant County, herein called the Quincy District (cause No. 37003), and the South Columbia Basin Irrigation District in Franklin County, herein called the South District (cause No. 37113).

The amendatory repayment contracts involved here are quite similar, but each is separate, and each speaks only for its district. For a clear view of the problems presented, it is necessary to detail some of the statutes, contract provisions and events leading up to the present controversy. In 1945, these districts made identical contracts (except as to maximum construction costs) with the United State covering repayment of contemplated irrigation and drainage[1] costs. In these contracts, the United States agreed to expend $280,782,180 for the construction of irrigation and drainage facilities on the entire Columbia Basin Project, with a limit of $8,176,000 to be spent on drainage facilities. When the limit of $8,176,000 had been reached for drainage, the cost of drainage works built thereafter would be charged each year to operation and maintenance in each district.

In 1959, the districts were advised by the United States that limitation on drainage expenditures had been reached and thereafter such cost would be charged to operation and maintenance in each district. Such charges were made and the districts paid them for 1960 and 1961. The drainage charges for 1962 were not paid because of a deferment authorized by joint resolution of Congress on August 30, 1961 (75 Stat. 408).

After being notified of the exhaustion of drainage funds, the districts and the United States began negotiations for amendatory contracts changing the terms of repayment to avoid excessive costs resulting from charging drainage costs to operation and maintenance. On August 31, 1961, the Secretary of the Interior submitted a report, "Framework for Solution of Repayment Problems, Columbia Basin Project, Washington."

---

[1]Columbia Basin Irrigation Project is made up of three districts, but only two are involved in these appeals. The other is the East Columbia Basin Irrigation Project in Adams County. Where mentioned herein, it is called East District.

The Quincy District then prepared an amendatory contract which was approved on February 13, 1962, by a vote of 2263 for and 297 against. A similar contract was approved in the South District on January 15, 1963, by a vote of 1204 for and 544 against.

On October 1, 1962, the Congress passed an act (76 Stat. 677) which approved and authorized the Secretary of the Interior to execute the contract with the Quincy District which had been approved by the electors February 13, 1962, *and further authorized the Secretary of the Interior to execute substantially similar contracts with the South District and the East District* (Adams County).

The amendatory repayment contracts now before the court, in Article 13 of the Quincy District and in Article 14 of the South District, provide that the contract in each case will not be binding on the United States until decreed to be a valid contract by the proper court of the state of Washington.

The districts have presented their respective contracts to the proper courts. The Quincy District (Grant County) contract was approved. The South District (Franklin County) contract was not approved. Appeals have been taken from both judgments.

The appellants in both cases primarily rely upon the following points: (1) the right of farmers to withdraw from district prior to election, and the necessity of notice thereof, and (2) the amendatory contracts are not binding on the United States because the contracts with other districts are not yet approved. The other points raised will be discussed later.

This is a special statutory proceeding wherein the districts seek court approval of the amendatory contracts. RCW 87.03.780 provides:

"The board of directors of an irrigation district . . . may commence a special proceeding in and by which . . . the proceedings of said board and of said district, providing for . . . any contract made or entered into . . . for the payment of moneys to the United States . . . may be judicially examined, approved and confirmed. . . ."

Those opposing the confirmation of the contracts, one individual landowner in cause No. 37003 and seven individual landowners in cause No. 37113, will be referred to as landowners. Their authority to contest the proceedings is found in RCW 87.03.795.

The jurisdiction of the court is set forth in RCW 87.03.800:

"Upon the hearing of such special proceedings, the court shall have full power and jurisdiction to examine and determine the legality and validity of and approve and confirm . . . all proceedings which may affect the authorization or validity of the contract with the United States . . . The court, in inquiring into the regularity, legality or correctness of said proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to said special proceedings, and it may approve and confirm such proceedings, in part, and disapprove and declare illegal or invalid other or subsequent parts of the proceedings. . . ."

The only procedural step complained of by the landowners was that the notice of any opportunity to withdraw was not given them by the districts in the official notices of the elections. In cause No. 37003, the court held the notice was not mandatory, and in cause No. 37113, that it was mandatory.

At the time of the 1945 contracts, Laws of 1943, chapter 275, § 5(d), p. 862, RCW 89.12.050(4), and 16 U.S.C.A. § 835a (e) (ii), provided that each district repayment contract may include:

". . . Without compliance with other provisions of state law for the exclusion of lands, lands may be withdrawn from the district by filing a written notice of withdrawal with the district board on or before such date fixed by such board between a date ten days after the official notice of the election on the repayment contract between the United States and the district and the date of such election. The date limiting the time of such filing shall be announced in the official notice of the proposed election, and lands for which such notice is filed shall be deemed excluded from the district for all purposes as of the time of such filing. . . ."

Sections 40(a) and 40(b) of the contracts of 1945, in compliance with Laws of 1943, chapter 275, § 5(d), p. 862, *supra*, were as follows:

"40(a). Lands within the District prior to the District election with respect to this contract may be withdrawn therefrom on compliance with the provisions of subsection 5(d) of Chapter 275 of the Laws of Washington, 1943.

"40(b). Lands so withdrawn shall not be entitled thereafter to receive water from, through or by means of the irrigation system so long as they remain in private ownership."

At the time of the execution of the 1945 contracts, the federal government contemplated the expenditure of $280,-782,180 on the Columbia Basin irrigation project. No irrigation facilities had then been constructed. It was necessary at that time to ascertain the approximate areas to be included before the expenditures were made. The project contemplated irrigation of 1,029,000 acres. Those landowners who did not want irrigation and others whose land was not suitable were given an opportunity to withdraw.

There were several reasons why landowners who so desired should be given the opportunity to stay out of the project, because those who wanted to remain in had to submit to a number of burdensome limitations (Laws of 1943, chapter 275, 16 U.S.C.A. § 835a), some of which were as follows:

(1) There must be agreements between United States and the district providing for payment of the cost as proportioned by the Secretary of the Interior. (2) Farm unit must be not more than 160 acres or less than 10 acres, and any acreage above 160 would be excess. (3) Within 6 months after execution of contract between United States and the district, the landowner must enter into a recordable contract containing substantially the limitations and requirements above mentioned; further agree that excess lands could be sold at an appraised value set by the Secretary of the Interior; and, further, that if the owner sold the irrigated unit, it would be at the appraised value and he would file an affidavit to that effect with the auditor.

·The penalty for noncompliance was that no water would be delivered to the property.

Later the laws, both state and federal, were amended to permit the excluded lands to come back into the districts. (Public Law 840, 81st Congress, 2d session, and Laws of 1951, chapter 200.) The districts and the United States thereupon, in 1951, amended Article 40 of the 1945 contracts as follows:

"4 Article 40 of Contract No. . . . [2] is hereby amended to read as follows:

" *'Delivery of Water to Lands Formerly Withdrawn*

" '40. Lands withdrawn from the District prior to the election in July 1945, in compliance with the provisions of subsection 5(d) of chapter 275 of the Laws of Washington, 1943, but brought back within the operation of the District shall, if otherwise eligible to receive water from, through or by means of the irrigation system, be eligible thereto only when made subject to a recordable contract executed pursuant to the provisions of the Columbia Basin Project Act (57 Stat. 14) as amended by the Act of September 26, 1950 (Public Law 840, 81st Cong., 2d Sess.), and chapter 275 of the Laws of Washington, 1943, as amended by chapter 200 of the Laws of Washington, 1951.' "

It will be noted that this amendment eliminated the withdrawal provision formerly contained in § 40(a) of 1945 contracts.

Upon receipt of notice of the exhaustion of the $8,176,000 drainage fund, the districts and the United States negotiated repayment contracts to avoid the excessive annual operation and maintenance charges for drainage construction. These contracts made no provision for withdrawal of any land. The notices of elections in the respective districts gave no notice of time in which withdrawals of land could be made as provided in RCW 89.12.050(4), *supra*, and 16 U.S.C.A. § 835a (e) (ii), *supra*.

· However, on October 1, 1962, the Congress in 76 Stat. 677[3] approved, and authorized the Secretary of the Interior

---

[2]Quincy District contract was No. I1r-1443, South District was No. I1r-1444.

[3]"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the amendatory

to execute, the Quincy District contract which received voter approval on February 13, 1962, and he was further authorized to negotiate and execute on behalf of the United States amendatory repayment contracts in substantially the same form and same provisions with the South and East Columbia Basin Irrigation Districts. This same act repealed the withdrawal provision of the Columbia Basin Project Act of March 10, 1943 (57 Stat. 14). On February 3, 1963, Laws of 1963, chapter 3, the legislature eliminated the right of withdrawal.

The acts of the parties to the contracts in eliminating the withdrawal provisions and later the acts of Congress and the legislature confirming those steps were indicative of the meaning of the statutes, and the rights existing or arising thereunder. That is, in the different districts as they were created, the landowners had a time and right to withdraw. In the 1945 contracts, the United States agreed to spend $280,782,180 on the project. The Quincy District agreed to repay a maximum of $24,900,000 as its share. The South District agreed to pay a maximum of $33,700,000. These items became general obligations of the respective districts and all the lands therein became and remained bound to pay those amounts. *State ex rel. Wells v. Hartung*, 150 Wash. 590, 274 Pac. 181 (1929); *Van Hollebeke v. Wheeler*, 55 Idaho 268, 41 P. (2d) 603 (1935); 16 U.S.C.A. § 835a (ii); RCW 87.03.215.

To permit landowners to withdraw their property and avoid payment after a large debt was incurred against it would be unusual procedure and could mean financial disaster to the district. If some withdrew, the debt would have to be borne by those remaining. By that procedure, the

repayment contract with the Quincy Columbia Basin Irrigation District negotiated by the Secretary of the Interior, pursuant to subsection (a) of section 7 of the Reclamation Project Act of 1939 (53 Stat. 1192; 43 U.S.C. 485f), which contract was approved by the district electors on February 13, 1962, is hereby approved and the Secretary is hereby authorized to execute it on behalf of the United States and to negotiate and execute on behalf of the United States amendatory repayment contracts in substantially the same form or amendatory repayment contracts containing substantially the same provisions with the South and East Columbia Basin Irrigation Districts."

United States could be deprived of the amounts due under the repayment contract without its consent.

If the right to withdraw was vested and unchangeable, then it is illogical that the United States would ever agree to amendatory contracts alleviating the plight of the respective districts. If the landowners could withdraw at will, an amendatory contract eliminating the obligation against the lands would be unnecessary. In summary, we find the situation to be as follows: The 1945 contracts provided for the withdrawal; 1951 contracts, as amended, eliminated the right; the contracts now under consideration further eliminated it; and, finally, the statutes, 76 Stat. 677, *supra*, and Laws of 1963, chapter 3, *supra*, have eliminated the withdrawal provision.

■ This court, in *In re Horse Heaven Irr. Dist.*, 11 Wn. (2d) 218, 226, 118 P. (2d) 972 (1941), in discussing the construction of a statute said:

"It is a rule of such universal application as to need no citation of sustaining authority that no construction should be given to a statute which leads to gross injustice or absurdity."

We conclude that the right to withdraw lands from the district was a limited one and the time has elapsed as to these particular landowners and the districts here involved. Having so concluded, it is not necessary to discuss the question of whether notice to withdraw was given.

Now we will consider the second objection to the contracts, namely, that the other districts have not had similar contracts approved by the courts.

Section 41 of the 1945 contracts provided as follows:

"This contract shall not be binding on the United States until (1) there have been obtained the final judgments and decrees as required by article 42 and (2) similar, separate contracts between the United States and the East Columbia Basin Irrigation District and the South Columbia Basin Irrigation District have been duly executed and likewise confirmed in appropriate court proceedings."

The contracts now before the court (Article 13 of the Quincy District contract and Article 14 of the South District contract) contain the following identical provisions:

"The execution of this amendatory contract shall be authorized or ratified by the qualified electors of the District at an election held for that purpose. The District, after the election and upon the execution of this amendatory contract, shall promptly secure a final decree of the proper court of the State of Washington approving and confirming this amendatory contract and decreeing and adjudging it to be a lawful, valid, and binding general obligation of the District. The District shall furnish to the United States certified copies of such decree and of all pertinent supporting records. This amendatory contract shall not become effective or be binding on the United States until the final decree required herein has been obtained."

Article 41 of 1945 contracts required similar contracts and court approval in all districts before the United States became bound. Those contracts have been in effect for more than 15 years and there is no reason to change them.

The new contracts have not expressly amended Article 41 of the earlier contracts but Articles 13 and 14, respectively, do, in effect, amend or modify it. The present contracts provide their own effective dates and agree that the United States will be bound as each contract is approved by the court.

This is understandable because, in 1945, the United States contemplated the expenditure of $280,782,180. No construction work had been done. The program included all three districts in the Columbia Basin Project. The facilities were to be joint. The United States wanted contracts from all three districts to be effective before the work started and before it was bound.

That is not the present situation. The contracts now before the court do not involve joint facilities. Each contract is separate and in no way affects any other district, and the United States has agreed to be bound as each contract receives court approval.

Such provisions are in accord with Report No. 2002 of the Committee on Interior and Insular Affairs made to the 87th Congress, 2d session, which contains the following:

"In summary, the proposed contract will provide for continuation of a workable project wide operation of the Columbia Basin Project irrespective of action or inaction

on the part of one or both of the remaining two districts to amend their existing contracts. The proposed amendments are in full accord with the proposals and recommendations of the Secretary's framework report."

The Congress acted upon the report and passed Public Law 87-728, 76 Stat. 677, heretofore quoted, wherein the Quincy District contract was approved and the other districts authorized to make similar ones.

We conclude that the court in each district can proceed to consider the amendatory contracts without previous approval in the other districts in the Columbia Basin Project.

In cause No. 37003, Grant County, the appellant, in addition to questions heretofore discussed in this opinion, makes the following additional objections: (1) the public officials did not contract within the law, (2) the Quincy District unlawfully interfered with the special election, (3) the proposed amendatory contract is not a contract because of uncertainty, and (4) the court erred in making findings of fact 4, 5, 21, 32, 33, 34, 35, and 36.

We have carefully considered these objections and examined the record and find they have no merit. The record discloses no unlawful conduct on the part of the district officers; there is no evidence of their interference in the special election. The objection that the contract is invalid because of uncertainty is based upon Article II of the amendatory contract which provides:

" . . . If, subsequent to the date of this contract, there are any other significant changes in the general policies of the United States with respect to the project or in the Federal statutes applicable thereto, the Secretary will, upon request of the District, negotiate amendments to this contract to conform it to such changes."

That provision does not in any way affect the present contract obligations. It is only a declaration of policy and has no effect upon the validity of the contract.

The last objection is that the findings, the numbers of which are set forth above, were erroneously made because they are conclusions of law and do not support the judgment. The court was obliged to make findings upon

the issues presented under the special proceeding provided for in RCW 87.03.780, *supra*. The findings objected to relate to the validity and propriety of the proceedings and the contract. As stated in *Kinnear v. Graham*, 133 Wash. 132, 233 Pac. 304, (1925),

". . . The purpose of findings is to enable this court to review the questions upon appeal, and when it clearly appears what questions were decided by the trial court, and the manner in which they were decided, we think that the requirements have been fully met."

The findings in this special proceeding enable this court to review all of those questions decided by the trial court and are sufficient to support the judgment.

The judgment in cause No. 37003 is affirmed. The judgment in cause No. 37113 is reversed.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

November 14, 1963. Petition for rehearing denied.