In re **BADGER MOUNTAIN IRRIGATION DISTRICT, Debtor.**

**BADGER MOUNTAIN IRRIGATION DISTRICT SECURED BONDHOLDERS' COMMITTEE, Appellant,**

v.

**BADGER MOUNTAIN IRRIGATION DISTRICT, Appellee.**

**BADGER MOUNTAIN IRRIGATION DISTRICT SECURED BONDHOLDERS' COMMITTEE, Appellee,**

v.

**BADGER MOUNTAIN IRRIGATION DISTRICT, Appellant.**

Nos. 87–4406, 87–4422.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 16, 1988.

Decided Sept. 14, 1989.

As Amended on Denial of Rehearing Dec. 6, 1989.

Michael Mines, Jack R. Wallace, and Richard S. Ralston, Betts, Patterson & Mines, P.S., Seattle, Wash. for appellant-appellee.

Jeffrey C. Krause, Stutman, Treister & Glatt, Los Angeles, Cal., for appellee-appellant.

Before GOODWIN, Chief Judge, WRIGHT and WALLACE, Circuit Judges.

GOODWIN, Chief Judge:

The Badger Mountain Irrigation District (the "District") is in chapter 9 bankruptcy. Its Secured Bondholders' Committee (the "Bondholders") has certain lien rights on property in the District's possession. The Bondholders claim that, notwithstanding bankruptcy, they have the power to enforce those lien rights. Specifically, the appeal and cross-appeal require us to decide whether the lien rights of the Bondholders extend to the District's power to levy assessments, and whether the Bondholders' lien is avoidable by the District as a municipal debtor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this appeal are not disputed. The District was formed in the mid-70s pursuant to chapter 87.03 of the Washington Code. Wash.Rev.Code Ann. [hereinafter RCWA] ch. 87.03 (1962 & Supp.1989). It was formed to facilitate development of approximately 5,000 acres, 4,000 of which were irrigable, into "gentleman farmer" tracts. At that time, the area was enjoying a period of rapid expansion as a hub for nuclear power and related industries. The local economy declined in the early 80s and has remained depressed.

Under chapter 87.03, property owners within an irrigation district can authorize the issuance of bonds to finance irrigation works. RCWA § 87.03.200. The district then levies and collects assessments based on the number of acres included within the district to pay off its indebtedness and to pay the costs of operation and maintenance. Id. § 87.03.260. If a landowner defaults, the district may foreclose on the landowner's property to pay the delinquent assessment. Id. §§ 87.03.265 & 87.03.270. When the number of assessment-bearing acres decreases as a result of foreclosure, the assessment amount on each remaining acre increases under the "last faithful acre" doctrine. In re Horse Heaven Irrigation District, 11 Wash.2d 218, 118 P.2d 972, 976–77 (1941). The statute secures the interests of an irrigation district's bondholders by giving them a lien over "all ... property acquired by [the] irrigation district." RCWA § 87.03.215.

In this case, the District owns approximately 3,000 foreclosed-upon acres. With only 1,000 of the irrigable acres left to support the outstanding debt, the District filed a voluntary petition under chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901 et seq. (1982 & Supp. V 1987), one day before defaulting on $5,000,000 of irrigation district bonds.

Following the filing of the bankruptcy petition, the Bondholders, as a duly appointed official creditors' committee, commenced an adversary proceeding to determine the extent and nature of their lien

rights against the District's property. The District brought a counterclaim, asserting that the Bondholders' lien rights were avoidable.

In the adversary proceeding, the bankruptcy court ruled that the Bondholders' lien over property owned by the District, including the 3,000 acres on which the District had foreclosed, was not avoidable, but that the lien did not extend to the District's power to levy and collect assessments. Both the District and the Bondholders appealed to the district court, which affirmed.

The Bondholders appeal the district court's conclusion that their lien does not extend to the District's assessment power. The District cross-appeals, arguing that the Bondholders' lien over District-owned property is avoidable.

## II. AVOIDABILITY OF THE BONDHOLDERS' LIEN

The parties agree that Washington state law provides the Bondholders with a lien against the property on which the District had foreclosed. RCWA § 87.03.215. The disputed question is whether that lien is avoidable under the Bankruptcy Code. Both the bankruptcy court and the district court found that the District could not avoid the Bondholders' lien under 11 U.S.C. § 545(2) (Supp. V 1987).

In reviewing a district court's affirmance of a bankruptcy court decision, our role is essentially the same as that of the district court. As no facts are disputed, we review only the district court's conclusions of law, and such conclusions are reviewed *de novo*. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986). We affirm.

We begin by applying bankruptcy law to chapter 87.03. Section 545 of the Bankruptcy Code governs a municipality's avoidance powers[1] respecting statutory liens.[2] That section states in pertinent part:

> The [municipality] may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> \* \* \* \* \* \*
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists[.]

11 U.S.C. § 545(2).

This crucial provision tests the lienholder's rights against those of a hypothetical bona fide purchaser. *See* 4 L. King, *Collier on Bankruptcy* ¶ 545.04[2] at 545–18 (1988). We apply this test to the scheme established by chapter 87.03.

■ The District argues that any purchaser, including a bona fide purchaser, takes the land free of all encumbrances, except for the continuing obligation for irrigation district assessments, *see* RCWA § 87.03.215 ("all the real property in the district shall be and remain liable to be assessed for such payments until fully paid"),[3] Thus, concludes the District, the

---

1. Although section 545 specifies the avoidance powers of the trustee in bankruptcy, chapter 9 gives those powers to the municipal debtor. *See* 11 U.S.C. § 902(5).

2. The language in the irrigation bonds establishing the Bondholders' lien is identical to that of section 87.03.215. The bankruptcy court concluded that the Bondholders' lien was statutory, citing 11 U.S.C. § 101(47) (Supp. V 1987), which defines a statutory lien as a "lien arising solely by force of a statute on specified circumstances or conditions." This finding is not disputed by the parties. We agree that the irrigation district *statute itself creates the lien,* which is not dependent upon any agreement of the parties. The bonds themselves simply constitute part of the "specified circumstances or conditions."

3. The ninth paragraph of section 87.03.370 provided:

> When the grantee in the deed is a party other than the irrigation district or the county, the deed conveys to the grantee the absolute title to the lands described therein, free from all encumbrances, except general taxes, drainage or diking district assessments, drainage or diking improvement district assessments, and all existing irrigation district assessments.

Section 87.03.370 was repealed by Laws 1988, ch. 134, § 15. This repeal clearly followed the filing of the suit and those events upon which the suit is based. Although the district court relied on this provision in its opinion, the parties do not cite it on appeal. From their arguments, however, it appears that the parties nonetheless agree that the proposition for which

terms of section 545 actually dictate that the Bondholders' lien is *ipso facto* avoidable. This view is too restricted; it does not take into account the conceptual arrangement of chapter 87.03.

It is true that under chapter 87.03, the Bondholders' lien does not directly encumber the land of a grantee of the District. Rather, that lien is specific to the District; that is, it attaches to the land only when that land is held by the District. *Id.* § 87.03.215. Thus the structure of chapter 87.03 makes it impossible for a grantee (the "bona fide purchaser") of the District to purchase land encumbered by the Bondholders' lien. However, neither does a grantee of the District take title free and clear; the District's lien for assessments does not vanish. *See id.* § 87.03.265. This lien allows the District to foreclose for nonpayment of assessments, thereby bringing the property into the possession of the District and causing the Bondholders' lien to attach. *Id.* § 87.03.215; *State ex rel. Wells v. Hartung*, 150 Wash. 590, 274 P. 181, 185 (1929). Thus, under the statutory scheme, the Bondholders' lien simply becomes submerged when the District passes title to a grantee (whereupon the District's assessment lien instead attaches.) Moreover, the Bondholders' interest in title, even when held by a grantee, is strengthened by the fact that the Bondholders are legally empowered to bring a mandamus proceeding to *compel* the county commissioners to levy the required assessments. RCWA § 87.03.260; *State ex rel. Witherop v. Brown*, 53 P. 548, 549 (Wash.1898). Therefore, the structure of the irrigation district law precludes the existence of a hypothetical bona fide purchaser in the context of the Bondholders' lien.

Our holding is consistent with the policy underlying the Bankruptcy Code provisions limiting statutory liens. The House Report accompanying the 1966 amendments to the Bankruptcy Act statutory lien provisions explains:

> section 87.03.370 stood remains a part of the statutory scheme.

It will be recalled that one of the major objectives of the Chandler Act was to overcome the distortion of the Federal Order of Distribution by the creation of spurious statutory liens. To upset these liens which were in reality priorities ... [the proposed amendment] strikes at a lien which is so tenuous that it can be defeated by transfer to a bona fide purchaser. The holders of such liens have reason to know that their security is extremely vulnerable. It would seem that if, apart from Bankruptcy, a lien is not good against a bona fide purchaser, then it should not be valid against the Trustee [here, the municipal debtor].

H.R.Rep. No. 686, 89th Cong., 1st Sess. 6–7 (1965).

The Bondholders' lien is far from "tenuous."[4] Rather, the protections provided by chapter 87.03 for the Bondholders are pervasive and many. When an irrigation district is formed, "a specific lien is created upon the property belonging to the district for the payment of the bonds at the time they are issued." *State ex rel. Clancy v. Columbia Irrigation District*, 121 Wash. 79, 208 P. 27, 30 (1922). Thus, section 87.03.215 protects the Bondholders in two ways: (1) the bonds are secured by this specific lien against all property owned or acquired by the District; and (2) all property within an irrigation district is liable for the district's *entire* bond debt, even, as here, where only a few parcels remain. *In re Quincy Columbia Basin Irrigation District*, 63 Wash.2d 115, 385 P.2d 715, 719–20 (1963) (reaffirming the "last faithful acre" doctrine), *cert. denied*, 376 U.S. 953, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964). This protection was found by the *Clancy* court to be necessary as security to allow sufficient money to be raised to build irrigation projects. 208 P. at 31. Moreover, no parcel of land can be removed from this cycle of assessments and liens without the unanimous consent of the Bondholders. RCWA § 87.03.670.

**4.** Nor is the Bondholders' lien a state-created priority applicable only in the event of bankruptcy. *Cf. In re Anchorage Int'l Inn, Inc.*, 718 F.2d 1446, 1452 (9th Cir.1983).

Furthermore, not only is the Bondholders' lien well protected by chapter 87.03, but also, all purchasers have constructive notice under the statutory scheme of the Bondholders' interest under the irrigation district law. The comprehensive statutory scheme gives notice to anyone purchasing land from the District that the land is encumbered. *Cf. In re Probasco*, 839 F.2d 1352, 1354 (9th Cir.1988) (constructive notice of a prior unrecorded transfer removes subsequent purchaser from protection of recording acts). An examination of the District's chain of title would show that the District's acquisition of the land had been accomplished pursuant to foreclosure proceedings under chapter 87.03. The Superior Court order ratifying the formation and election of directors of an irrigation district must be filed with the auditor and assessor of any county in which the district property is located. RCWA § 87.03.040. Additionally, the statute requires an order to be filed, noted, and carried forward in the county assessor's office opposite the legal description of every parcel of land in the district. *Id.*

This constructive notice [5] adds to the durability of the Bondholders' lien. We conclude the Bondholders' lien is not avoidable.

### III. EXTENT OF BONDHOLDERS' LIEN

■ Both the bankruptcy court and the district court found that the Bondholders' lien did not extend to the District's power to assess landowners. We review *de novo*, as noted *supra,* and we affirm.

As discussed above, section 87.03.215 gives the Bondholders a lien over property acquired by the District. The Bondholders argue that the District's power to levy and collect assessments from landowners within the District constitutes an equitable servitude, and thus qualifies as "property" within the meaning of section 87.03.215. To support their claim, they point to takings cases recognizing the power to levy assessments as an equitable servitude and therefore as compensable property in a condemnation proceeding. *See State v. Human Relations Research Foundation*, 64 Wash.2d 262, 391 P.2d 513, 516 (1964); *see also United States v. 129.4 Acres of Land, More or Less*, 572 F.2d 1385, 1386 (9th Cir.1978). To ignore the import of these takings cases, they argue, is to ignore governing state law and thereby to deprive them of their bargained-for security.

Any lien rights held by the Bondholders are statutory and derive from section 87.03.215 of the Washington Code. *See supra* note 2. Thus the Bondholders have a lien over the District's assessment power only if section 87.03.215 grants such a lien.[6] Bearing in mind the principle that statutory liens are strictly construed, *Shope Enterprises, Inc. v. Kent School District*, 41 Wash.App. 128, 702 P.2d 499, 502 (1985), a reading of that statute compels the conclusion that no such lien exists.

---

5. *See also Jones v. Berg*, 105 Wash. 69, 177 P. 712, 717–18 (1919) (a properly recorded instrument is constructive notice of the rights created by the instrument and of all recitals in the instrument).

6. Section 87.03.215 states:

Said bonds and interest thereon ... shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property in the district shall be and remain liable to be assessed for such payments until fully paid as hereinafter provided. *And in addition to this provision and the other provisions herein made for the payment of said bonds and interest thereon as the same may become due,* said bonds ... shall become a lien upon all the water rights and other property acquired by any irrigation district formed under the provisions of this chapter, and upon any canal or canals, ditch or ditches, flumes, feeders, storage reservoirs, machinery and other works and improvements acquired, owned or constructed by said irrigation district, and if default shall be made in the payment of the principal of said bonds or interest thereon, ... the owner of said bonds ... shall have the right to enter upon and take possession of all the water rights, canals, ditches, flumes, feeders, storage reservoirs, machinery, property and improvements of said irrigation district, and to hold and control the same, and enjoy the rents, issues and profits thereof, until the lien hereby created can be enforced in a civil action in the same manner and under the same proceedings as given in the foreclosure of a mortgage on real estate. RCWA § 87.03.215 (emphasis added).

Title 87 does not define the term "property." The Bondholders would have us incorporate a meaning of that term derived from takings cases. But incorporating an interpretation of that term from another context would be improper where, as here, that interpretation would be inconsistent with the statutory scheme. *See* 2A *Sutherland Statutory Construction* § 50.03 (4th ed. 1984).

The first sentence of section 87.03.215 provides that payments due on the bonds are to be paid from assessment revenues. Thus the bondholders' primary security is the assessment mechanism. The second sentence states that "in addition to this provision [for assessments] and the other provisions herein made for the payment of said bonds and interest thereon ... said bonds ... shall become a lien upon all the water rights and other property acquired by [the] irrigation district." Notably, this sentence includes no specific mention of the assessment power, though the section otherwise deals with that power. The separation of the assessment power on one hand from the additional security of lien rights on the other suggests that the Washington legislature never intended to establish a lien over the assessment power itself.

Moreover, the statute provides an enforcement mechanism for the lien rights established by the second sentence, and that mechanism makes no sense in the context of assessments. In particular, the statute provides that in the event of default, the bondholder may "enter upon and take possession of all the [district's] property ..., and enjoy the rents, issues and profits thereof, until the lien ... can be enforced in a [foreclosure] action." It is nonsensical to speak of "entering" an assessment power or enforcing a lien on an assessment power with a standard foreclosure remedy. And while the bondholders do not argue they should be permitted to take possession of the assessment mechanism in order to enforce their rights—they wish merely to preserve their mandamus remedy—an enforcement mechanism through possession and eventual fore-

closure is the only such mechanism contemplated by the statute.

Finally, other uses of the term "property" in title 87 seem even more clearly not to include the District's assessment power. Under certain circumstances, for example, the statute provides for the sale of "all of the property and rights of the district." RCWA § 87.53.110. Bondholders themselves may bid for the assets at the sale, *id.*, but future assessments may be made only by a governmental authority. *Id.* § 87.53.140.

In response to this statutory argument, the Bondholders can point only to the importance of the assessment mechanism to the statutory scheme. It is true that the scheme attempts to ensure the ongoing nature of assessments. For example, if the ture of assessments. None of these provisions, however, supports the claim that the Bondholders have a lien on the District's assessment power.

Thus the Bondholders' lien over property held by the District—which lien we have held not to be avoidable—does not cover the District's power to levy assessments, even though that power has been deemed an equitable servitude in other contexts.

The judgment of the district court is AFFIRMED.